## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| RDPA, LLC,<br><br>                  Plaintiff,<br><br>v.<br><br>CLEAR CHANNEL OUTDOOR, LLC,<br><br>                  Defendant. | Case No.: 6:21-cv-132<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

**NOW COMES** Plaintiff, RDPA, LLC, (*hereafter* "RDPA" or "Plaintiff"), by and through undersigned counsel, as and for its Complaint for Patent Infringement against Defendant, CLEAR CHANNEL OUTDOOR, LLC (*hereafter* "Clear Channel" or "Defendant") states as follows:

## NATURE OF THE ACTION

1.      This is an action for patent infringement of United States Patent Nos. 6,970,131, 7,038,619, 7,176,834, 7,215,280, and 8,462,048 (collectively, the "Asserted Patents") under the patent laws of the United States, 35 U.S.C. § 1 et seq.

## PARTIES

2.      Plaintiff RDPA is a limited liability corporation organized and existing under the laws of the State of Washington, with a principal place of business at 4616 25th Avenue NE, #339, Seattle, Washington 98105.

3.      Defendant Clear Channel is a limited liability corporation organized and existing under the state of Texas with a principal place of business at 4830 North Loop 1604 W STE 111, San Antonio, Texas 78249.

## JURISDICTION

4.      This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., including 35 U.S.C. §§ 271, 281, 283, 284, and 285.

5.      This is a patent infringement lawsuit over which this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332 and 1338(a).

6.      Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, by virtue of at least its substantial business conducted in this forum, directly and/or through intermediaries, including (i) having solicited business in the State of Texas, transacted business within the State of Texas and attempted to derive financial benefit from residents of the State of Texas, including benefits directly related to the instant patent infringement causes of action set forth herein; (ii) having placed its products and services into the stream of commerce throughout the United States and having been actively engaged in transacting business in Texas and in this District; and (iii) either alone or in conjunction with others, having committed acts of infringement within Texas and in this District.

7.       On information and belief, within the District, Defendant directly and/or through intermediaries has advertised (including through websites), offered to sell, sold and/or distributed infringing products, and/or have induced the sale and use of infringing products in the United States, Texas, and this District.

8.      On information and belief, the Defendant have, directly or through its distribution network, purposefully and voluntarily placed such products in the stream of commerce knowing and expecting them to be purchased and used by consumers in Texas and this District.

9.      On information and belief, the Defendant has committed direct infringement in Texas and this District.

10.     On information and belief, the Defendant has derived substantial revenues from their infringing acts in this District, including from their marketing, licensing, and sale of infringing products in the United States.

## VENUE

11.     Venue is proper against Defendant in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b) because Defendant has a regular and established place of business in this District at 4830 North Loop 1604 W STE 111, San Antonio, Texas 78249, and has committed acts of infringement in this District. Defendant has an Office in Travis County and within this District.

12.     Defendant employs full-time personnel, such as sales personnel, office workers, and engineers in this district, including in San Antonio, Texas and Austin, Texas. Specifically, Defendant also owns and maintains advertisements in Austin, Texas, including at the Austin airport.

13.     Upon information and belief, Defendant distributes, makes available, uses, sells and offers to sell products throughout the United States, including in this judicial district, and introduces products into the stream of commerce that incorporate infringing technology knowing that they would be used and sold in this judicial district and elsewhere in the United States.

## THE ASSERTED PATENTS

### The Five Asserted Patents

14.     On November 29, 2005, U.S. Patent Number 6,970,131 (the "'131 Patent"), entitled "Satellite Positioning System Enabled Media Measurement System and Method," was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the '131 Patent is attached as Exhibit A to this Complaint.

15.     The '131 Patent issued from U.S. patent application Serial Number 10/686,872 filed on October 16, 2003 and discloses and relates to assessing the effectiveness of media displays.

16.     The '131 Patent claims patent-eligible subject matter and is valid and enforceable.

17.     Defendant is not licensed to the '131 Patent in either an express or implied manner.

18.     On May 2, 2006, U.S. Patent Number 7,038,619 (the "'619 Patent"), entitled "Satellite Positioning System Enabled Media Measurement System and Method," was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the '619 Patent is attached as Exhibit B to this Complaint.

19.     The '619 Patent issued from U.S. patent application Serial Number 10/318,422 filed on December 11, 2002 and discloses and relates to assessing the effectiveness of media displays.

20.     The '619 Patent claims patent-eligible subject matter and is valid and enforceable.

21.     Defendant is not licensed to the '619 Patent in either an express or implied manner.

22.     On February 13, 2007, U.S. Patent Number 7,176,834 (the "'834 Patent"), entitled "Satellite Positioning System Enabled Media Measurement System and Method," was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the '834 Patent is attached as Exhibit C to this Complaint.

23.     The '834 Patent issued from U.S. patent application Serial Number 11/366,349 filed on March 2, 2006 and discloses and relates to assessing the effectiveness of media displays.

24.     The '834 Patent claims patent-eligible subject matter and is valid and enforceable.

25.     Defendant is not licensed to the '834 Patent in either an express or implied manner.

26.     On May 8, 2007, U.S. Patent Number 7,215,280 (the "'280 Patent"), entitled "Satellite Positioning System Enabled Media Exposure," was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the '280 Patent is attached as Exhibit D to this Complaint.

4

27.     The '280 Patent issued from U.S. patent application Serial Number 11/489,029 filed on July 18, 2006 and discloses and relates to assessing the effectiveness of media displays.

28.     The '280 Patent claims patent-eligible subject matter and is valid and enforceable.

29.     Defendant is not licensed to the '280 Patent in either an express or implied manner.

30.     On July 11, 2013, U.S. Patent Number 8,462,048 (the "'048 Patent"), entitled "Satellite Positioning System and Method for Determining the Demographics of Individuals Passing Retail Locations," was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the '048 Patent is attached as Exhibit E to this Complaint.

31.     The '048 Patent issued from U.S. patent application Serial Number 12/271,789 filed on November 14, 2008 and discloses and relates to assessing the effectiveness of media displays.

32.     The '048 Patent claims patent-eligible subject matter and is valid and enforceable.

33.     Defendant is not licensed to the '048 Patent in either an express or implied manner.

34.     The '131 Patent, '619 Patent, '834 Patent, '280 Patent, and '048 Patent are referred to as the "Asserted Patents."

**Ownership of the Asserted Patents**

35.     RDPA is the sole owner of all rights, title, and interest in and to the '131 Patent including the right to sue for and collect past, present, and future damages and to seek and obtain injunctive or any other relief for infringement of the '131 Patent.

36.     RDPA is the sole owner of all rights, title, and interest in and to the '619 Patent including the right to sue for and collect past, present, and future damages and to seek and obtain injunctive or any other relief for infringement of the '619 Patent.

37.     RDPA is the sole owner of all rights, title, and interest in and to the '834 Patent including the right to sue for and collect past, present, and future damages and to seek and obtain injunctive or any other relief for infringement of the '834 Patent.

38.     RDPA is the sole owner of all rights, title, and interest in and to the '280 Patent including the right to sue for and collect past, present, and future damages and to seek and obtain injunctive or any other relief for infringement of the '280 Patent.

39.     RDPA is the sole owner of all rights, title, and interest in and to the '048 Patent including the right to sue for and collect past, present, and future damages and to seek and obtain injunctive or any other relief for infringement of the '048 Patent.

### The Improvement Needed for Audience Measurement

40.     Prior to the filing of Asserted Patents, businesses struggled to accurately measure the exposure of public media displays in order to obtain reach and frequency statistics for specific media displays.

41.     Accordingly, publicly viewable media display providers could not take advantage of media-buying changes and thereby increase market share against other measured media (*e.g.*, television, radio, and on-line). In fact, many media display providers did not even consider publicly displayed media as there was no reliable measurement system to gauge exposure. *See, e.g.*, Ex. A, the '131 Patent at 1:37-54 (discussing problems in the industry prior to the filing of the Asserted Patents).

42.     To address these deficiencies, the Asserted Patents disclose a system and method for using monitoring devices to determine the exposure and effectiveness of publicly viewable media displays.

43.     Concepts disclosed in the Asserted patents include, *inter alia*, allowing satellite positioning system (*e.g.*, GPS) enabled monitoring devices to track the movement of multiple

respondents and a post processing server to rate the effectiveness of the media display using the geo location data from the monitoring devices.

44.     Thus, the Asserted Patents disclose and claim not only the idea of determining media display effectiveness, but also recite limitations directed to employing unconventional technological solutions to these technological problems encountered in the prior art.

45.     In particular, the Asserted Patents claim unconventional uses of satellite positioning system enabled monitoring devices, geo data, download servers, and post processing servers to accurately measure the effectiveness of publicly viewable media displays.

46.     The Asserted Patents have claim limitations, which are tailored in scope to solve the issues discussed above. Among other limitations, as an illustrative example, Claim 1 of the '619 Patent requires:

> "each of said plurality of monitoring devices *utilizing a satellite positioning system* ("SPS") to independently track the movement of the related respondent…*collecting the geo data from each of the monitoring devices*; and analyzing said collected geo data to determine if said plurality of respondents have been exposed to media displays by *matching said geo data that represents the paths of travel followed by said plurality of respondents with media display locations* to determine the effectiveness of the media displays at the media display locations." (*Id*. at 25:9-10 and 25:19-25, emphasis added).[1]

47.     By tracking the GPS locations of respondent mobile devices, the Asserted Patents are able to track the respondent monitoring device compared to the location of the media display, determining reach and frequency thereof. This claim limitation is tailored in scope and solves the problems discussed above, as it is able to track the location of individuals in cars and walkways to determine reach and frequency of the advertisement *Id*. at 13:15-27.

---

[1] Similar language is found in the claims of all of the Asserted Patents. *See* the '131 Patent at 25:15-39, the '834 Patent at 25:20-35, the '280 Patent 24:50-64 and the '048 Patent 24:55-25:14.

48.     The expert declaration of John Acheson – GPS Technical Director at BAE Systems – further supports that the Asserted Patents were not conventional or routine at the time of invention, stating:

> Implementation of all the complex components required to create this system is not a simple task that to be easily accomplished today and was far more complicated in 2001. Many critical pieces of technology are required to make this system work such as GPS for absolute position and time, data logging capabilities of the outputs of those GPS receivers, data connectivity to consolidate logged information over time and complex processing algorithms running on data servers to track consumers relative to target advertising.
>
> This system must include the location of the advertising display as well as its orientation to present information to the target consumer. An area of effect for each display must be known to collect valid data as displays are often obstructed by buildings, landscape or other advertising limiting their impact. Each physical advertising sign will vary its area of impact by its size and readability over distance. In addition to the advertising database, tracking the target consumer via GPS receiver and logging the absolute position, time and direction of travel is critical to aggregating the desired metrics.

Declaration of John Acheson, ¶15-16 attached hereto as Ex. F.

## BACKGROUND FACTS

49.     In 2002, RDPA had signed an exclusive IP and technology license agreement with The Nielsen Company.    The executives at Clear Channel who were most familiar with this arrangement were CEO Paul Meyer, Chief Revenue Officer Rocky Sisson, and Vice President and Director of Research, Andrew Marcus.  They were the executives who represented Clear Channel on Nielsen's Global Outdoor Advertising Council.

50.     As stated in a widely circulated Nielsen press release dated October 8, 2002, and referenced in "Media Week," a respected industry publication, in their October 14, 2002, edition: "If the outdoor industry can develop a credible way to more accurately measure the audience it reaches, the medium will be far more competitive, and that will provide new opportunities to significantly grow our business," said Paul Meyer, President and CEO of Clear Channel Outdoor. "We believe these new measurement techniques - especially if they are stamped with the

imprimatur of Nielsen, a company well known for its high-quality research - will demonstrate to advertisers just how effective outdoor can be in reaching their targeted audiences." Ex. G at p. 2.

51.     In the same press release, Roger Percy, CEO of RDP Associates, was quoted as saying: "We are delighted to provide Nielsen with the proprietary GPS technology for this test, and we're pleased to be working with them to develop what promises to become the global audience currency for outdoor media." *Id*. at p. 4.

52.     Additionally, a specific list of RDPA's patent portfolio was provided via email to Andrew Marcus on Friday February 5, 2016 in advance of a presentation given to Clear Channel by Roger and Cameron Percy, co-inventors of the patents, the following Monday, February 8, 2016. *See* Ex. H (the email correspondence) and Ex. I (the attached presentation).

53.     Accordingly, Clear Channel knew of the Asserted Patents at least by the date of February 5, 2016.

### DEFENDANT'S INFRINGING PRODUCTS AND METHODS

54.     Out-of-home (OOH) advertising is advertising that reaches consumers while they are outside their homes. OOH advertising can be, among other forms, digital billboards or static billboards.

55.     Digital billboards are electronic displays that are controlled remotely or locally by computers wherein the digital image can be readily changed at certain time intervals (*i.e.*, hourly, daily, weekly, monthly, etc.). Static billboards display the same image for a long period of time.

56.     Defendant makes, uses, sells, offers for sale, and/or imports into the United States systems and methods for assessing the effectiveness of media displays (*e.g.*, digital and static billboards) that infringe at least claims 1, 3, and 7 of the '131 Patent; claims 1, 9, and 13-15 of the

'619 Patent; claims 1, 8, and 12 of the '834 Patent; claims 1 and 15-24 of the '280 Patent; and claims 15, 19, 28, and 36-38 of the '048 Patent.

57.     Defendant makes, uses, sells, offers for sale, and/or imports into the United States the Clear Channel RADAR Platform, which is an audience location measurement platform that allows Clear Channel customers to audit the audience and circulation of out of home media in the United States. Among other features, the Clear Channel RADAR Platform allows Clear Channel customers to measure and analyze audience location and movement and further analyze how consumers engage with OOH advertising.

58.     The Clear Channel RADAR Platform is a "suite of powerful tools leveraging mobile data to help advertisers and agencies more effectively plan, amplify and measure the impact of their out-of-home campaigns." Ex. J at p. 1.

59.     Further, RADAR "give[s] advertisers tools to buy and measure the effectiveness of outdoor ads that are similar to those they use for digital and mobile ads." Ex. K at p. 2.

60.     As shown in the image below, Clear Channel also partners with third parties, such as Geopath, to collect and store geo data from a plurality of respondent monitoring devices.



Ex. L at p. 1. Emphasis added.

61.     Additionally, as shown in the image below, Clear Channel also partners with third parties, such as Cuebiq, to collect and store geo data from a plurality of respondent monitoring devices.

> The latest member of this club is Clear Channel Outdoor, which recently announced a partnership with Cuebiq to measure real-world impact of OOH (digital and traditional) ads. Cuebiq is using first-party location data from its SDK (software development kit), which the company says is integrated into more than 180 mobile apps and "anonymously collects GPS, Wi-FI, and IoT signals." Cuebiq says its reach is more than 61 million uniques or "1 in 4 US smartphone users and more than 2 in 5 smartphone users worldwide."

Ex. M at p. 3. Emphasis added.

62.     Clear Channel partners with third parties, such as AT&T to collect and store geo data from a plurality of respondent monitoring devices.

> To build the Radar program, Clear Channel partnered with three data-collection entities. AT&T Data Patterns uses GPS data track the location of AT&T subscribers and mobile analytics company PlaceIQ collects location data from mobile apps that share data with third parties and blends that with other purchased data, like census information. But the data that is most helpful for advertisers is collected by the analytics company Placed, another analytics company that tracks users who download its app, and compensates them for taking surveys about shopping activity.

Ex. N at p. 1. Emphasis added.

63.     Specifically, as demonstrated in the image below, RADAR aggregates mobile location data from multiple data collection entities to determine an individual's movement.

**Clear Channel Outdoor RADAR offers a suite of data-driven solutions for more effective planning, amplification and measuring the impact of Out-of-Home advertising.**

Bringing powerful digital insights to the physical world of OOH, CCO RADAR leverages anonymous, aggregated mobile location data to help advertisers understand consumer mobility, behavior and true campaign impact.

Ex. O at p. 2.

64.     RADAR allows advertisers to determine the effectiveness of media displays. RADAR allows its customers (*e.g.*, advertisers and agencies) to select billboards and view weekly impressions such that the customer can determine the effectiveness of its media displays (*e.g.*, billboards).



Ex. P at p. 2.

65.    By aggregating mobile data and providing information to help advertisers understand their media displays, it is reasonably presumed that Clear Channel downloads the geo data from the data providers to make the types of analyses that advertisers utilize to determine effectiveness of the media displays.



Ex. Q at p. 3.

66.    As shown in the images below, using location mobile data, Clear Channel monitors individuals as they travel throughout their day to determine the individuals' exposure to media displays.



Ex. R at p. 2

13



Ex. R at p. 5.

67.    Specifically, RADAR "uses global positioning data from mobile apps to gain a better understanding of who's passing by signage." Ex. S at p. 6.

68.    As shown below, RADAR creates a map having a path representing the path traveled by the respondent while the checkmarks represent media displays the respondent has been exposed to on their path of travel.



*The path represents the respondent's path of travel*

14

Ex. T at p. 1. Emphasis added.

69.     By using RADAR, "marketers can become their own mini-data scientists by better understanding where to invest their marketing spend with precision to achieve maximum engagement with their desired audiences." Ex. U at p. 1. Specifically, RADAR allows "advertisers the power to optimize their OOH campaigns by entering specific information like demographics, audience segments, or locations to reach consumers along the pathways most traveled." *Id*.

70.     Further, Clear Channel "uses technology to let advertisers tailor messages by leveraging travel patterns and real-time data from mobile phones" in an attempt to "boost effectiveness of brands' campaigns and let marketers better measure the impact of their OOH efforts." Ex. V at p. 1.

71.     Specifically, as described on its web page, Clear Channel describes that its "audience measurement systems will provide insight on when [the advertiser's] outdoor creative will yield the best reach and frequency." Ex. W at p. 1.

## COUNT I – INFRINGEMENT OF THE '131 PATENT

72.     RDPA hereby realleges Paragraphs 1 through 72 as though fully set forth herein.

73.     Defendant directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 1, 3, and 7 of the '131 Patent pursuant to 35 U.S.C. § 271(a) by making, using, selling, or offering to sell, and/or importing systems and/or methods for assessing the effectiveness of media displays that embody the inventions claimed in the '131 Patent, within the United States and this District.

74.     The notice provisions of 35 U.S. Code § 287 do not apply where the patent is directed to a process or method. (*See American Medical Systems, Inc. v. Medical Engineering Corp.*, 6 F.3d 1523 (Fed. Cir. 1993).

75.     Defendant directly infringes at least claims 1, 3 and 7 of the '131 Patent by performing some of the steps of the claimed methods and directing and controlling individual and corporate users to perform the remaining claimed steps by conditioning use of the accused system on performance of the remaining patented steps. Defendant also directs and controls its individual and corporate users by conditioning the receipt of a benefits associated with the accused system—in this case, using geo data to track the path of a user—upon performance of the remaining steps in the patented method.  Defendant also establishes the manner and timing of the performance by instructing its users how to use the accused systems.

76.     On information and belief, the accused method of determining the effectiveness of media displays includes (a) storing geo data in a plurality of respondent monitoring devices as said plurality of respondent monitoring devices move along respective paths of travel, at least a portion of said geo data derived from a satellite positioning system, said stored geo data representing the movement of said plurality of respondent monitoring devices along said respective paths of travel; and (b) downloading said geo data stored in said plurality of respondent monitoring devices to a post processing server for: (i) matching the locations of a plurality of media displays to positions on said respective paths of travel of said plurality of respondent monitoring devices represented by said geo data; and (ii) rating the effectiveness of said plurality of media displays based on said matches between said plurality of media display locations and said positions on said respective paths of travel of said plurality of respondent monitoring devices represented by said geo data.

77.     Defendant has been and is engaged in one or more of these direct infringing activities at least by making, using, selling, or offering to sell the Clear Channel RADAR Platform.

78.     Defendant has actual notice of the '131 Patent and the infringement alleged herein at least as early as February 5, 2016.

79.     Upon gaining knowledge of the '131 Patent, it was, or became, apparent to the Defendant that the manufacture, sale, importing, offer for sale, and use of the Clear Channel RADAR Platform results in infringement of the '131 Patent.

80.     On information and belief, Defendant will continue its infringement notwithstanding actual knowledge of the '131 Patent and without a good faith basis to believe that its activities do not infringe any valid claim of the '131 Patent. All infringement of the '131 Patent following Defendant's knowledge of the '131 Patent is willful, and RDPA is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

81.     RDPA has incurred and will continue to incur substantial damages, including monetary damages.

82.     RDPA has been and continues to be irreparably harmed by Defendant's infringement of the '131 Patent.

83.     Therefore, RDPA is entitled to an injunction, actual and/or compensatory damages, reasonable royalties, pre-judgment and post-judgment interest, enhanced damages, and costs.

## COUNT II – INFRINGEMENT OF THE '619 PATENT

84.     RDPA hereby realleges Paragraphs 1 through 83 as though fully set forth herein.

85.     Defendant directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 1, 9, and 13-15 of the '619 Patent pursuant to 35 U.S.C. § 271(a) by making, using, selling, or offering to sell, and/or importing systems and/or methods for assessing the effectiveness of media displays that embody the inventions claimed in the '619 Patent, within the United States and this District.

86.     The notice provisions of 35 U.S. Code § 287 do not apply where the patent is directed to a process or method. (*See American Medical Systems, Inc. v. Medical Engineering Corp.*, 6 F.3d 1523 (Fed. Cir. 1993).

87.     Defendant directly infringes at least claims 1, 9 and 13-15 of the '619 Patent by performing some of the steps of the claimed methods and directing and controlling individual and corporate users to perform the remaining claimed steps by conditioning use of the accused system on performance of the remaining patented steps. Defendant also directs and controls its individual and corporate users by conditioning the receipt of a benefits associated with the accused system— in this case, using geo data to track the path of a user—upon performance of the remaining steps in the patented method.  Defendant also establishes the manner and timing of the performance by instructing its users how to use the accused systems.

88.     On information and belief, the accused method of assessing the effectiveness of media displays includes employing a plurality of monitoring devices for determining the paths of travel followed by a plurality of respondents, each of said respondents associated with a respective one of said plurality of monitoring devices each of said plurality of monitoring devices utilizing a satellite positioning system to independently track the movement of the related respondent along the path of travel followed by the respondent, each of said plurality of monitoring devices generating geo data that represents the path of travel followed by the respondent; storing said tracking as geo data; collecting the geo data from each of the monitoring devices; and analyzing said collected geo data to determine if said plurality of respondents have been exposed to media displays by matching said geo data that represents the paths of travel followed by said plurality of respondents with media display locations to determine the effectiveness of the media displays at the media display locations.

89.     Defendant has been and is engaged in one or more of these direct infringing activities at least by making, using, selling, or offering to sell the Clear Channel RADAR Platform.

90.     Defendant has actual notice of the '619 Patent and the infringement alleged herein at least as early as February 5, 2016.

91.     Upon gaining knowledge of the '619 Patent, it was, or became, apparent to the Defendant that the manufacture, sale, importing, offer for sale, and use of the Clear Channel RADAR Platform results in infringement of the '619 Patent.

92.     On information and belief, Defendant will continue its infringement notwithstanding actual knowledge of the '619 Patent and without a good faith basis to believe that its activities do not infringe any valid claim of the '619 Patent. All infringement of the '619 Patent following Defendant's knowledge of the '619 Patent is willful, and RDPA is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

93.     RDPA has incurred and will continue to incur substantial damages, including monetary damages.

94.     RDPA has been and continues to be irreparably harmed by Defendant's infringement of the '619 Patent.

95.     Therefore, RDPA is entitled to an injunction, actual and/or compensatory damages, reasonable royalties, pre-judgment and post-judgment interest, enhanced damages, and costs.

## COUNT III – INFRINGEMENT OF THE '834 PATENT

96.     RDPA hereby realleges Paragraphs 1 through 95 as though fully set forth herein.

97.     Defendant directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 1, 8, and 12 of the '834 Patent pursuant to 35 U.S.C. § 271(a) by making, using, selling, or offering to sell, and/or importing systems and/or methods for assessing the effectiveness of media displays that embody the inventions claimed in the '834 Patent, within the United States and this District.

98.     The notice provisions of 35 U.S. Code § 287 do not apply where the patent is directed to a process or method. (*See American Medical Systems, Inc. v. Medical Engineering Corp.*, 6 F.3d 1523 (Fed. Cir. 1993).

99.     Defendant directly infringes at least claims 1, 8 and 12 of the '834 Patent by performing some of the steps of the claimed methods and directing and controlling individual and corporate users to perform the remaining claimed steps by conditioning use of the accused system on performance of the remaining patented steps. Defendant also directs and controls its individual and corporate users by conditioning the receipt of a benefits associated with the accused system— in this case, using geo data to track the path of a user—upon performance of the remaining steps in the patented method.  Defendant also establishes the manner and timing of the performance by instructing its users how to use the accused systems.

100.     On information and belief, the accused method of determining the effectiveness of media displays includes employing a plurality of monitoring devices for tracking the paths of travel followed by a plurality of respondents, each of said respondents associated with a respective one of said plurality of monitoring devices, each of said plurality of monitoring devices utilizing a satellite positioning system to independently track the movement of the related respondent along the path of travel followed by the respondent, each of said plurality of monitoring devices generating satellite data that represents the path of travel followed by the respondent; storing said satellite data; collecting the satellite data from each of the monitoring devices; and analyzing said collected satellite data to determine if said plurality of respondents have been exposed to media displays by matching geo data based at least in part on said satellite data that represents the paths of travel followed by said plurality of respondents with media display locations to determine the effectiveness of the media displays at the media display locations.

101.    Defendant has been and is engaged in one or more of these direct infringing activities at least by making, using, selling, or offering to sell the Clear Channel RADAR Platform.

102.    Defendant has actual notice of the '834 Patent and the infringement alleged herein at least as early as February 5, 2016.

103.    Upon gaining knowledge of the '834 Patent, it was, or became, apparent to the Defendant that the manufacture, sale, importing, offer for sale, and use of the Clear Channel RADAR Platform results in infringement of the '834 Patent.

104.    On information and belief, Defendant will continue its infringement notwithstanding actual knowledge of the '834 Patent and without a good faith basis to believe that its activities do not infringe any valid claim of the '834 Patent. All infringement of the '834 Patent following Defendant's knowledge of the '834 Patent is willful, and RDPA is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

105.    RDPA has incurred and will continue to incur substantial damages, including monetary damages.

106.    RDPA has been and continues to be irreparably harmed by Defendant's infringement of the '834 Patent.

107.    Therefore, RDPA is entitled to an injunction, actual and/or compensatory damages, reasonable royalties, pre-judgment and post-judgment interest, enhanced damages, and costs.

### COUNT IV – INFRINGEMENT OF THE '280 PATENT

108.    RDPA hereby realleges Paragraphs 1 through 107 as though fully set forth herein.

109.    Defendant directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 1 and 15-24 of the '280 Patent pursuant to 35 U.S.C. § 271(a) by making, using, selling, or offering to sell, and/or

importing systems and/or methods for assessing the effectiveness of media displays that embody the inventions claimed in the '280 Patent, within the United States and this District.

110.    The notice provisions of 35 U.S. Code § 287 do not apply where the patent is directed to a process or method. (*See American Medical Systems, Inc. v. Medical Engineering Corp.*, 6 F.3d 1523 (Fed. Cir. 1993).

111.    Defendant directly infringes at least claims 1 and 15-24 of the '280 Patent by performing some of the steps of the claimed methods and directing and controlling individual and corporate users to perform the remaining claimed steps by conditioning use of the accused system on performance of the remaining patented steps. Defendant also directs and controls its individual and corporate users by conditioning the receipt of a benefits associated with the accused system—in this case, using geo data to track the path of a user—upon performance of the remaining steps in the patented method.  Defendant also establishes the manner and timing of the performance by instructing its users how to use the accused systems.

112.    On information and belief, the accused method of determining the effectiveness of media displays includes (a) tracking paths of travel followed by a plurality of respondents utilizing a satellite positioning system to: (i) independently track the movement of each of the respondents along the path of travel followed by the respondent; and (ii) generate satellite data that represents the path of travel followed by the respondent ("respondent satellite data"); (b) collecting the respondent satellite data; and (c) analyzing said collected respondent satellite data to determine if said respondents have been exposed to media displays by matching geo data based at least in part on said respondent satellite data with media display location data.

113.    On information and belief, the accused system for determining the effectiveness of media displays includes (a) a data processor; and (b) data storage coupled to the data processor,

the data storage storing, in a form suitable for processing by the data processor, data representing the exposure of media displays to respondents ("media display exposure data"), said media display exposure data created by: (1) tracking paths of travel followed by a plurality of respondents utilizing a satellite positioning system to: (i) independently track the movement of each of the respondents along the path of travel followed by the respondent; and (ii) generate satellite data that represents the path of travel followed by the respondent ("respondent satellite data"); (2) collecting the respondent satellite data; and (3) analyzing said collected respondent satellite data to determine if said respondents have been exposed to media displays by matching geo data based at least in part on said respondent satellite data with media display location data.

114.    Defendant has been and is engaged in one or more of these direct infringing activities at least by making, using, selling, or offering to sell the Clear Channel RADAR Platform.

115.    Defendant has actual notice of the '280 Patent and the infringement alleged herein at least as early as February 5, 2016.

116.    Upon gaining knowledge of the '280 Patent, it was, or became, apparent to the Defendant that the manufacture, sale, importing, offer for sale, and use of the Clear Channel RADAR Platform results in infringement of the '280 Patent.

117.    On information and belief, Defendant will continue its infringement notwithstanding actual knowledge of the '280 Patent and without a good faith basis to believe that its activities do not infringe any valid claim of the '280 Patent. All infringement of the '280 Patent following Defendant's knowledge of the '280 Patent is willful, and RDPA is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

118.    RDPA has incurred and will continue to incur substantial damages, including monetary damages.

119.    RDPA has been and continues to be irreparably harmed by Defendant's infringement of the '280 Patent.

120.    Therefore, RDPA is entitled to an injunction, actual and/or compensatory damages, reasonable royalties, pre-judgment and post-judgment interest, enhanced damages, and costs.

## COUNT V – INFRINGEMENT OF THE '048 PATENT

121.    RDPA hereby realleges Paragraphs 1 through 120 as though fully set forth herein.

122.    Defendant directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe at least claims 15, 19, 28, and 36-38 of the '048 Patent pursuant to 35 U.S.C. § 271(a) by making, using, selling, or offering to sell, and/or importing systems and/or methods for assessing the effectiveness of media displays that embody the inventions claimed in the '048 Patent, within the United States and this District.

123.    The notice provisions of 35 U.S. Code § 287 do not apply where the patent is directed to a process or method. (*See American Medical Systems, Inc. v. Medical Engineering Corp.*, 6 F.3d 1523 (Fed. Cir. 1993).

124.    Defendant directly infringes at least claims 15, 19, 28 and 36-38 of the '048 Patent by performing some of the steps of the claimed methods and directing and controlling individual and corporate users to perform the remaining claimed steps by conditioning use of the accused system on performance of the remaining patented steps. Defendant also directs and controls its individual and corporate users by conditioning the receipt of a benefits associated with the accused system—in this case, using geo data to track the path of a user—upon performance of the remaining steps in the patented method. Defendant also establishes the manner and timing of the performance by instructing its users how to use the accused systems.

125.    On information and belief, the accused apparatus for determining the effectiveness of media displays includes a computer-implemented method of determining the demographics of

and how often individuals ("respondents") pass predetermined geographic locations, the method comprising: (a) storing geo data in a plurality of respondent monitoring devices as said plurality of respondent monitoring devices move along respective paths of travel, each of said respondent monitoring devices associated with a respondent having known demographics, at least a portion of said geo data derived from a satellite positioning system, said stored geo data representing the movement of said plurality of respondent monitoring devices along said respective paths of travel; and (b) downloading said geo data stored in said plurality of respondent monitoring devices to a post processing server for analyzing the downloaded geo data to determine (i) the demographics of respondents passing a plurality of predetermined geographic locations and (ii) how often individual respondents pass each of the plurality of predetermined geographic locations by comparing the geo data representing the movement of said plurality of respondents monitoring devices along said respective paths of travel with stored data representing the plurality of predetermined geographic locations.

126.    Defendant has been and is engaged in one or more of these direct infringing activities at least by making, using, selling, or offering to sell the Clear Channel RADAR Platform.

127.    Defendant has actual notice of the '048 Patent and the infringement alleged herein at least as early as February 5, 2016.

128.    Upon gaining knowledge of the '048 Patent, it was, or became, apparent to the Defendant that the manufacture, sale, importing, offer for sale, and use of the Clear Channel RADAR Platform results in infringement of the '048 Patent.

129.    On information and belief, Defendant will continue its infringement notwithstanding actual knowledge of the '048 Patent and without a good faith basis to believe that its activities do not infringe any valid claim of the '048 Patent. All infringement of the '048 Patent

following Defendant's knowledge of the '048 Patent is willful, and RDPA is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

130.    RDPA has incurred and will continue to incur substantial damages, including monetary damages.

131.    RDPA has been and continues to be irreparably harmed by Defendant's infringement of the '048 Patent.

132.    Therefore, RDPA is entitled to an injunction, actual and/or compensatory damages, reasonable royalties, pre-judgment and post-judgment interest, enhanced damages, and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, RDPA, LLC moves this Honorable Court for judgment to be entered in its favor and against Defendant, CLEAR CHANNEL OUTDOOR, LLC, and for the following relief:

(i)     A declaration that the '131 Patent is valid and enforceable;

(ii)    A declaration that the '619 Patent is valid and enforceable;

(iii)   A declaration that the '834 Patent is valid and enforceable;

(iv)    A declaration that the '280 Patent is valid and enforceable;

(v)     A declaration that the '048 Patent is valid and enforceable;

(vi)    A declaration that the Defendant has directly infringed one or more claims of the '131 Patent, either literally and/or under the doctrine of equivalents;

(vii)   A declaration that the Defendant has directly infringed one or more claims of the '619 Patent, either literally and/or under the doctrine of equivalents;

(viii)  A declaration that the Defendant has directly infringed one or more claims of the '834 Patent, either literally and/or under the doctrine of equivalents;

(ix)    A declaration that the Defendant has directly infringed one or more claims of the '280 Patent, either literally and/or under the doctrine of equivalents;

(x)     A declaration that the Defendant has directly infringed one or more claims of the '048 Patent, either literally and/or under the doctrine of equivalents;

(xi)     An award of damages sufficient to compensate RDPA for Defendant's infringement of the '131 Patent, '619 Patent, '834 Patent, '280 Patent, and the '048 Patent pursuant to 35 U.S.C. § 284;

(xii)    An award of prejudgment and post-judgment interest pursuant to 35 U.S.C. § 284;

(xiii)   A payment of ongoing royalties in an amount to be determined for any continued infringement after the date that judgement is entered;

(xiv)    Treble damages for willful infringement as permitted under 35 U.S.C. § 284;

(xv)     An award of attorneys' fees incurred in prosecuting this action, on the basis that this is an exceptional case provided by 35 U.S.C. § 285;

(xvi)    Enjoin each Defendant, its officers, subsidiaries, agents, servants, members, and employees, and all persons in active concert with any of the foregoing from further infringement of the '131 Patent, '619 Patent, '834 Patent, '280 Patent, and '048 Patent; and

(xvii)   Such other and further relief as this Court shall deem appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury of any and all issues triable of right before a jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## RESERVATION OF RIGHTS

Plaintiff's investigation is ongoing, and certain material information remains in the sole possession of the Defendant or third parties, which will be obtained via discovery herein. Plaintiff expressly reserves the right to amend or supplement the causes of action set forth herein in accordance with Rule 15 of the Federal Rules of Civil Procedure.

Dated:  February 8, 2021                    Respectfully submitted,

                                            */s / Robert Christopher Bunt*
                                            William Cory Spence
                                            Anthony Wenn
                                            SpencePC
                                            515 N. State Street, 14th Floor
                                            Chicago, Illinois 60654

312-404-8882
william.spence@spencepc.com
anthony.wenn@spencepc.com

Robert Christopher Bunt
State Bar No. 00787165
Charles Ainsworth
State Bar No. 00783521
PARKER, BUNT & AINSWORTH, P.C.
100 E. Ferguson, Suite 418
Tyler, TX  75702
(903) 531-3535 (telephone)
rcbunt@pbatyler.com
charley@pbatyler.com

*ATTORNEYS FOR PLAINTIFF*
*RDPA, LLC*